**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| NATHAN WAYNE DANNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00020-ACL |
| | ) | |
| OFFICER JOHN DOE 1, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on review of plaintiff Nathan Wayne Danner's civil rights complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

**Background**

Plaintiff is a self-represented litigant who is currently incarcerated at the South Central Correctional Center in Licking, Missouri. On January 26, 2022, he filed a prisoner civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Missouri. (Docket No. 1). Along with the complaint, he submitted a motion for leave to proceed in forma pauperis and a motion to appoint counsel. (Docket No. 2; Docket No. 4).

On February 1, 2022, the Western District provisionally granted plaintiff leave to proceed in forma pauperis, denied his motion for appointment of counsel without prejudice, and transferred the matter to this Court, due to the fact that his claims arose during his incarceration at the Southeast Correctional Center in Charleston, which is in the Eastern District of Missouri.

**28 U.S.C. § 1915(b)(1)**

As noted above, the Western District granted plaintiff provisional leave to proceed in forma pauperis. However, no initial partial filing fee was assessed.

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff submitted a copy of his inmate account statement from the Missouri Department of Corrections. (Docket No. 3). The account statement shows an average monthly deposit of $37.86. The Court will therefore assess an initial partial filing fee of $7.57, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983. The complaint is on a Court-provided form, and names John Doe No. 1, John Doe No. 2, and John Doe No. 3 as defendants. (Docket No. 1 at 2-3). All three defendants are correctional officers, and are sued in their individual capacities only. Plaintiff accuses defendants of violating his Eighth Amendment right to be free from cruel and unusual punishment. (Docket No. 1 at 3).

In the "Statement of Claim," plaintiff asserts that on February 27, 2021, while at the Southeast Correctional Center, he was "placed into an administrative segregation confinement cell with an inmate that defendant(s) knew, or reasonably should have known, would attack/injure [him]." (Docket No. 1 at 4). He alleges that defendants' "actions/in-actions created circumstances where [he] was attacked and physically injured," which violated his "clearly established right(s)."

Attached to the complaint are a number of exhibits, including a personal property form, a "medical file," an informal resolution request (IRR), an IRR response, an offender grievance, a grievance response, an offender grievance appeal, a grievance appeal response, physician notes, and patient discharge information. (Docket No. 1-1). The Court will treat these exhibits as part of the pleadings in determining the sufficiency of the complaint.[1]

Of particular note is plaintiff's offender grievance, which provides additional facts that are missing from the "Statement of Claim." In the grievance, plaintiff states that he "got into a situation with [inmate] Timothy Skaggs in the chow hall on [February 26, 2021]." (Docket No. 1-1 at 7).

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

Due to this "situation," plaintiff was placed in "the hole" on that same day. His cellmate was Ryan Solomon.

Plaintiff asserts that ten minutes after being placed in a cell with Solomon, Solomon "got in the air-vent and started talking to Drak-o[,] his Family Values partner." When the conversation ended, Solomon got "off the toilet" and "hit [plaintiff] in the face and didn't stop." At some point, Solomon "asked Drak-o[,] his Family Value partner[,] if that was enough," but "Drak-o said no [and] to keep going and don't stop no matter what." Plaintiff asserts that he had to crawl under his bunk so that Solomon "would stop beating and stomping on [him]." When it was time for count, plaintiff got out from beneath the bunk and went to the cell door. Following Solomon's assault, plaintiff was taken to the hospital, where he received three staples in the back of his head and nine stitches in his left ear.

According to plaintiff, Officer Douglas and Officer Mansfield[2] were the ones who put him into the cell with Solomon, and also did the count the night of the assault. He further states: "You can look at [the] history on Timothy Skaggs and on Ryan [Solomon]…Timothy Skaggs does things for Family Values and Ryan Solomon."

Subsequent to the filing of his complaint, plaintiff submitted forty-five pages of handwritten interrogatories. (Docket No. 8). These interrogatories are directed at five separate individuals: Nurse Emily; Officer Douglas; Nurse Tracy; Officer Blake; and Officer Mansfield. None are expressly identified as defendants in the caption or body of the complaint. Relevant to his failure to protect claim, plaintiff insinuates through his questions that Solomon was "prospecting for a prison gang that had a greenlight" on him, meaning "an open invitation to assault at any time." Importantly, plaintiff never accuses defendants of knowing this before he was placed

---

[2] In the grievance, plaintiff spells the name "Manfield." However, in the subsequent interrogatories, the officer is identified as "Mansfield."

5

in a cell with Solomon. Indeed, there are no direct allegations that Solomon was, in point of fact, "prospecting for a gang that had a greenlight on him."

Based on this assault, plaintiff "sustained serious injuries which required treatment at a medical [facility] outside the prison." (Docket No. 1 at 5). He seeks injunctive relief and "for fair and reasonable damages, costs, and fees."

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that defendants failed to protect him while he was an inmate at the Southeast Correctional Center. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Individual Capacity Claims

Plaintiff has sued defendants in their individual capacities only, alleging that they failed to protect him from an assault when he was an inmate at the Southeast Correctional Center. However, plaintiff has not presented sufficient facts to support a failure to protect claim, nor has he established each defendant's personal responsibility for violating his constitutional rights.

#### i. No Allegations to Support a Failure to Protect Claim

Being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). As such, prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Prison officials must take reasonable measures to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004). However, not every injury suffered by

one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

To prove an Eighth Amendment violation, an inmate must fulfill two requirements, one objective and one subjective. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement is that, viewed objectively, the alleged deprivation of rights is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective inquiry, and requires that the prisoner prove that the prison official had a "sufficiently culpable state of mind." *Id*. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007).

With regard to the first element, plaintiff must show that he was at a substantial risk of serious harm. *See Berry v. Sherman*, 365 F.3d 631, 634 (8th Cir. 2004). Typically, a failure to protect case arises out of an inmate-on-inmate assault that involves an attacker known to be dangerous and volatile. *See Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020). *See also Young*, 508 F.3d at 873 (explaining that inmate who assaulted plaintiff posed a substantial risk of serious harm because the inmate was "particularly volatile…was easily offended and enraged, and that he was willing to attack…when in a state of rage"); *Newman v. Holmes*, 122 F.3d 650, 651-52 (8th Cir. 1997) (explaining that inmate who assaulted plaintiff posed a substantial risk of serious harm because he was on disciplinary court review status, meaning the inmate was a potential

7

danger to others and was supposed to be in isolated confinement); and *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (assuming without deciding that inmate who assaulted plaintiff posed a substantial risk when prison officials knew that plaintiff had a relationship with the inmate's wife, and the inmate threatened plaintiff).

In determining whether a substantial risk of serious harm exists, the Court looks at certain factors such as (1) whether plaintiff had been threatened by the assaulting inmate; (2) whether the assaulting inmate was known to be violent or volatile; (3) whether plaintiff and the assaulting inmate had previously argued or fought, been cellmates, or even knew each other; and (4) whether either plaintiff or the assaulting inmate had recently been in protective custody or in a restrictive status such as administrative segregation. *See Vandevender*, 970 F.3d at 976.

In this case, plaintiff presents no facts demonstrating that Solomon – the inmate who assaulted him – presented a substantial risk of harm to him. The "Statement of Claim" provides only "that defendant(s) knew, or reasonably should have known" that his cellmate "would attack/injure [him]." This is an unsupported conclusion, which does nothing more than recite the elements of a cause of action without any facts to bolster the proposition. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"); and *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

Even taking the allegations in the grievance into account, plaintiff has still not established a risk of harm. His only statement on the issue is to refer to "the history on Timothy Skaggs and Ryan [Solomon]," and to vaguely note that "Timothy Skaggs does things for Family Values and

Ryan Solomon." None of this goes to show that the inmate who assaulted plaintiff posed a serious risk of harm. For example, there are no facts suggesting that Solomon threatened plaintiff; that Solomon was known to be violent or volatile; or that plaintiff and Solomon had previously argued or fought, or even knew each other. To the contrary, the facts in the grievance imply that the assault came with little forewarning. Specifically, plaintiff states that Solomon talked to another inmate through an air vent, and that at the conclusion of this conversation, immediately attacked him.

The Court notes that in interrogatories submitted to the Court, plaintiff suggests – through his questions – that Solomon was "prospecting for a prison gang that had a greenlight" on him, meaning "an open invitation to assault at any given time." Despite the implication in his questions, he never directly alleges that Solomon had a prior intent to assault him, had ever previously threatened him, or presented any kind of known danger *before* they were placed into a cell together. That is, plaintiff has not alleged that he or anyone else knew that Solomon was prospecting for a gang that wanted to assault plaintiff at the time plaintiff and Solomon became cellmates.

If a plaintiff fails to allege a substantial risk of serious harm, then he has failed to state a claim, and there is no need to consider the issue of the defendant's deliberate indifference. *See Berry*, 365 F.3d at 635. Even if the Court were to assume a substantial risk of harm to plaintiff, there is no indication that defendants were deliberately indifferent.

To support the second prong of a failure to protect claim, plaintiff must show that defendants "recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). Negligence is insufficient to demonstrate deliberate indifference. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). Instead, plaintiff must demonstrate that defendants "actually intended to deprive him of some right," or that

9

defendants "acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984).

In this case, plaintiff does not present factual allegations establishing that defendants intentionally or recklessly disregarded a known risk to his safety. For example, he does not allege that he told defendants that Solomon was "prospecting for a prison gang," or that a prison gang had a "greenlight" to "assault [him] at any given time." Furthermore, plaintiff does not claim that defendants were aware of past risky behavior by Solomon, or that they knew of any threats. There is also no indication that plaintiff objected to being placed into a cell with Solomon, thereby putting defendants on notice. Instead of facts, plaintiff presents only a legal conclusion, arguing that defendants "knew…or reasonably should have known" that Solomon would assault him. This conclusion is not entitled to the presumption of truth. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

For all the reasons discussed above, plaintiff's allegations do not show that defendants knew of and disregarded a risk to plaintiff's safety. Therefore, his failure to protect claim must be dismissed.

### ii. No Allegations Demonstrating Defendants' Personal Responsibility

Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203,

1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has expressly named three fictitious John Doe defendants, and refers to them in the "Statement of Claim." In an attached grievance, plaintiff mentions two others by name: Officer Douglas and Officer Mansfield. Additionally, plaintiff directs interrogatories to Nurse Emily, Nurse Tracy, Officer Douglas, Officer Mansfield, and Officer Blake. It is unclear whether some of these named individuals are actually the Doe defendants, whether these individuals are additional defendants, or if these individuals simply have information about his assault. In any event, plaintiff makes no effort to establish a causal link between any individual and the violation of his constitutional rights. That is to say, he treats all the defendants as a single group, without any factual allegations describing what each particular person did or did not do to harm him. This is not sufficient to assert each defendant's personal responsibility for harming him. Therefore, for this reason as well, plaintiff's individual capacity claims must be dismissed.

**B. Motion to Appoint Counsel**

Plaintiff has filed a motion to reconsider the Western District's denial of his earlier motion to appoint counsel. (Docket No. 8). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff must pay an initial partial filing fee of $7.57 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance

payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 8) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 3rd day of May, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE